Good morning, Your Honors. Reza Sina for the appellants. Your Honors, the issues in this case can be boiled down to just about three. One is whether the copyright damages verdict and the trademark damages verdict are inconsistent. The second is if they're not inconsistent, whether the damages award for both of them amount to double recovery. And then we have two issues with admission of exhibits that we believe were prejudicial. I believe everything's been briefed. Unless the court has any questions, I can just briefly state that under the standard for reconciling inconsistent verdicts, I don't think the record here supports any theory that the copyright verdict of $1.6 million and the trademark verdict of $1.3 million could be reconciled when it was all based on a single testimony of one expert witness who testified that the damages in this case and discouragement were $1.6 million. No matter how you cut it, you can't arrive at a figure of $1.3 million for the trademark damages. The only way that after reviewing the record I was able to do it is if they arrived at that figure and tried to come up with a total sum in award of damages. And in this case, this ties into the admission of the exhibits from the website that were dated in 2006, two years before any infringement took place, that said that boasted that the revenue of the company was $10 million. And that exhibit was plastered throughout the trial, and I believe the jury may have looked at that and thought that $10 million would be a right amount of damages to award in this case. And the way they did it is they gave $1.6 million in copyright, $7 million in statutory damages, $1.3 million in trademark, and arrived at a $10 million figure. Other than that, there's no support for a $1.3 million trademark damages verdict. And so they're inconsistent. Even if they were consistent, then the issue of double recovery would come. If $1.6 million was awarded for copyright and $1.3 million in trademark, all from disgorgement of profits, then that's essentially saying there's $2.9 million in disgorgement, which, again, isn't supported by the record. So I submit to the court that the issues in this case will be decided on whether the verdicts were inconsistent on those damages, and if there's any theory under which you can make them reconcile, and I don't see it in this record. And then on the second issue of the evidence. Let me stop you there. If they're inconsistent, wouldn't it be better to state that there was insufficient evidence rather than inconsistent? Because if you look, as you must, at the face of the verdict itself, how is it on the face of the verdict inconsistent as opposed to really insufficient evidence to support what you characterize as double recovery? I think it would be, I think on the face of it, they are inconsistent, and there's insufficient evidence to support the trademark damages award. But there was sufficient evidence in the record to support the copyright damages of $1.6 million because the expert testimony said the only damages in this case are disgorgement of profits, and the profits were $1.6 million. Those are two different arguments, aren't they? Insufficient evidence and inconsistent verdict? Yes, they are two different arguments. And what I'm arguing here is that the verdicts on their face are inconsistent, and if you had to come up with a theory to reconcile them, that no theory is supported by the evidence in the record, which would say $1.3 million in trademark damages. Or another way to look at it would be $2.9 million in disgorgement because it would amount to double recovery. It's hard to separate the two, but that's why inconsistency is the first thing that flies out, actually, is how did they arrive at these two damages verdicts on the same exact evidence that was presented, which was $1.6 million. So are you saying that the relief you would seek is to set aside the trademark award? Excuse me, Your Honor, I'm sorry, I didn't hear you. I said is the relief you would seek be to set aside the trademark award? The relief that we would seek would be a new trial on the damages. For both? For both. Well, you just said I thought that the damages in the copyright claim were supported by the evidence. They were supported by the evidence. But if the evidence is inconsistent on those two verdicts, then we would obviously prefer to have a new trial on damages if the secondary fallback would be to set aside the trademark award. But the court asked, what's the relief you would seek? The first relief I think anyone would get up here would be a new trial because we lost on those issues. But if I can't have that, of course I would ask to set aside the trademark because there really is no support for a $1.3 million trademark award. Well, other than your $10 million some argument, the statutory damages are unaffected, are they not? Right, the statutory damages are unaffected. I tried to pin this case up where it really comes at the heart of it, which was stuff that jumped out at me from the trial. And one of them was this inconsistency. And the second was how did a jury really come up with $1.3 million in trademark? And after scouring the record, the only thing I could come up with was they were trying to reach a $10 million award. That's what they thought would be fair, but they arrived at it in the wrong way. But I'm still trying to get really to what you're asking for. You agreed that the copyright damages were supported by the evidence. So the only evidence was $1.6 million, and that's what the copyright evidence is. Damages are also the $7 million statutory damages you don't attack. But you're really saying there's insufficient evidence for the trademark award, and it's also inconsistent. So if I can follow your argument, you're really just seeking to set aside the inconsistent trademark award because you conceived that the copyright award was proper and was supported by the evidence of the expert. So what you are complaining about is that the trademark award probably also should have been $1.6 million, but it's not, and it's inconsistent. It is inconsistent. And what I'm complaining about is I think the jury arrived at a number of $10 million based on the admission of evidence that should have never been in there. Except that the ‑‑ well, that's a different thing, that the evidence should have been admitted. But the award the jury reached in the copyright case was exactly the award that the evidence supported, if the evidence should have been admissible. But it's exactly the award that the expert testified to. That is correct, for the copyright award. Yeah. So you're really only attacking the trademark award. I'm attacking both of them because of the same theory that I believe the jury tried to arrive at a figure of $10 million and arrived at it the wrong way. There was no evidence to support those. And the reason I think a new trial on damages on both issues is important is to go back and try the case on damages without that exhibit of $10 million and see what the jury will come back with on award of trademark and copyright. But what if you lose on that? That's a separate argument whether the $10 million number should be set aside. If we lose on that, the trademark award should be set aside. Because? Because there's no evidence to support it. And if there was evidence to support it, it would amount to double recovery for copyright and trademark damages because there was a single act, one act. It's as if we were I copied ABC's programming. There's always the ABC logo. What about the Nintendo case, counsel? Doesn't that foreclose this argument that you're making right now? The Nintendo case, there was two acts. The person was copywriting the Nintendo games. And then on top of that was taking the actual trademark and stamping it on cartridges. Okay. But in this case, the allegation, what the jury had was evidence that there was broadcast that was unauthorized and that there was also misuse of this trademark. Yeah. The broadcasting inherently in the programming, that's why I was trying to talk about ABC or any other news channel in the corner. It's already there. Well, so what? What if it was one act that violated two different statutes? Why is that under the Nintendo case? Isn't that expressly permissible? I believe under the Nintendo case there were two acts. That's why they said if you can't divide. I'm sorry, Your Honor. In that case, they divided the acts. Okay. And in this case, you think the jury didn't have the ability to find that both statutes were violated? They could find that both statutes were violated, but they found that under one act, not two separate acts, the Nintendo case allowed what I'm calling double recovery because they dinged them for two different wrongs. There wasn't two different acts. Did the Nintendo case say that there had to be two different acts? The Nintendo case said if there's a divisible act, if you divide the acts into two separate things, then it did amount to double recovery. And in there, the two acts were the copyright. I'm familiar with Nintendo. Right. Thank you. Okay. Unless the Court has any questions, I'd rather save one or two minutes for rebuttal. A question with regard, going back to the insufficiency of the evidence now, wouldn't that have to have been raised under Rule 50A before or 50B after the jury came in with a verdict? Your Honor, all of those issues were raised in the post-trial briefs, and I don't think it needed to be raised in a Rule 50A motion. They weren't raised, were they, in a Rule 50B or A? They were orally raised with the Court as soon as the verdict came in, because the judge called us and said, is this inconsistent, what's going on here? And the counsel argued. They said, no, Your Honor, we believe that $1.3 million could be supported, because if the jury takes out $270,000 in DVD sales from the expert's testimony, then we arrive roughly at $1.3 million. So it was argued. It wasn't waived. Was it raised with regard to inconsistency or double recovery, or was insufficiency of the evidence discussed in the record there? Your Honor, it was raised. I don't believe it was couched as, Your Honor, this is a Rule 50A motion we're making. It was raised in discussing whether the verdict was proper or not, and we discussed all the different arguments for why it was proper or improper. And that's why we even got into talking about numbers, because we were trying to figure out if there was sufficient evidence to support a $1.3 million trademark award. So they were raised, but was it raised with a heading that said Rule 50A? No. Counsel, what prevented the jury from relying on the DVD sales to fund trademark infringement? Because the argument was that we are seeking the same exact award for production on the online sales and the DVD sales, all of them $1.6 million. It was never said that we are taking one aspect of it out. Okay. So it's not that there weren't two acts. There was evidence of more than one act that would have triggered both statutes. Your problem is the measure of damages only? No, there was only one act. The act being, and I'm talking about copyright versus trademark infringement. Nobody ever stamped anything with a false trademark on it. It was already inherently on the product. It was broadcast in the DVD sales, right? Right, but those aren't the two acts that we were discussing in terms of copyright and trademark infringement. The act is whether they took a symbol and put it on a product, and they never did that. The product already had the symbol. I understand your argument. Okay. Wasn't there other reference, though, to use of trademark outside the DVD and the Internet? Wasn't there some evidence in the record concerning that? There was some evidence of advertisements, but that wasn't part of the damage model that was presented. The only part of the damage model was the online sales and the DVD sales. There was other evidence that for, I think, a newspaper advertisement, they showed it. Supporting misuse of the trademark. So this comes back to it. Judge Settle's question is exactly what I'm trying to get at. Your arguments are two things, and they seem to be inherently inconsistent to me. One is that there weren't separate acts that would have triggered both statutes. And I think we've discussed that the record indicates that there was evidence in front of the jury that would have triggered the trademark statute. And it seems to me your real problem is the measure of damages. Right. That is my whole problem is the measure of damages. I asked you that about 30 seconds ago, and you said no. Is your answer yes? My answer is on the issue of damages, there's only one act that amounted to $1.6 million in evidence that they put in. Not on the issue of liability. It's on the issue of damages. There was one act. Unlike Nintendo, there wasn't two separate acts that arrived at damages. Right. So you're complaining about the measure of damages. Yes. If you don't have any more questions, Your Honors, I'll sit down and I'll see if there's anything left. Thank you. I please the Court, Howard Wisniak, on behalf of the appellee of Bangkok Broadcasting. I'm going to start, if I may, with the last question, which in the record at SCR1, for example, is a prepaid card that people could buy in the grocery stores that improperly uses BBTV's trademark, which was not on a video. Right. So could you skip past the separate ask question? Because I think we've all read the record. Can you tell me what evidence was admitted to prove trademark damages? All of the damages evidence, specifically to numbers, was presented through the expert testimony of Mr. Kinrich. So there was his testimony as well as the exhibits that he relied upon, which were internal accounting records from the company defendants. Counsel, but my question is a little different. Opposing counsel says that there was one number that the jury heard from that expert that was really a disgorgement number. Is that right? I disagree with that. He added it up to a million five nine something, but he said there was basically two numbers. There was a million 330, I believe, and 270. I'm kind of rounding the numbers here. The million 330 related to Internet-related infringement and the 270 something related to DVD-related infringement. And so as you see, we believe to the extent that there's any consistent verdict, and we don't believe there is, one way that the court could easily explain it is saying, well, the jury may have said, we think the trademark infringement enhanced your infringement on the Internet but did not enhance your DVD sales. Therefore, that gets you to around a million 330. There was testimony from Mr. Kinrich that the accounting records of the defendants were in disrepair. They were not well kept. And therefore, it's reasonable to see that the jury may have decided to round down as opposed to round up because of that inconsistency in their records. The fact is, though, in the record, the expert Kinrich didn't segregate. He just spoke of infringement. And you can infringe a trademark. You can infringe a copyright. And he spoke in his testimony really of infringement. He didn't segregate the damages with respect to either of the DVD and then also the Internet, did he? He did not offer an opinion on whether something was copyright infringement or trademark infringement. He said, assuming there is infringement, this is the unfair enrichment, unjust enrichment with respect to Internet sales. This is the unjust enrichment that relates to the DVD sales. But isn't this why opposing counsel keeps saying that there was just one act that was complained of, this infringement, without further parsing of the number? Well, there was more evidence with respect to liability. There was certainly different evidence that was presented with respect to both copyright infringement and trademark infringement, for example. We're just here about damages today, right? I believe that's correct, Your Honor. Would it have made a difference if there hadn't been an election of statutory damages, the jury awarded the statutory damages a seven-plus million, and came in with a trademark verdict and a copyright verdict at 1.33? Would that change the result here with regard to your argument on inconsistent verdicts? I don't believe so. First of all, Your Honor, procedurally that issue has not been preserved at all, the inconsistent verdict issue. If during the trial there was a concern that these numbers had to be the same, Mr. Sena's action should have been to request a jury instruction from the trial judge that says, Jury, you have to answer this number. Both of these have to be the same number. That is the remedy that's proposed in Zhang. That's the remedy that's proposed in Duke. He never did that. So he didn't make a 50-A motion of any kind. There was a discussion earlier of whether or not he raised anything. And Mr. Sena, I think, rightfully mentioned that after the verdict had come in, there was some sidebar discussion. That's not the time for a 50-A motion. A 50-A motion has to be made before the matter is submitted to the jury. And it had not been so. Obviously, after the verdict. Well, it could be raised to 50-B. Yes, but under Unitherm and the precedent of this Court, you can only renew under 50-B a previously made 50-A motion. You cannot, without a 50-A motion, there is no 50-B motion to make. I apologize if I've lost the specific question, if I have addressed it. So first I'd like to talk about for a moment about the procedural issues, which is we don't think that any potential error in this case has been preserved for appeal in this case. As we've just mentioned, there's been no Rule 50 motions. But there was a notice of appeal filed before the post-trial motion, right? There was a notice of appeal filed before the Rule 59 motion for a new trial, if that's what you're referring to, Your Honor. Yes. That is correct. That notice of appeal was filed. But they did not, there was no 50-A or 50-B to preserve, so there's nothing to present there. For the 59 motion, the clerk of the Court, of this Court, recognized that the Rule 59 motion had been filed, stayed the appeal, and expressly notified appellant that if they wished to appeal the decision on the Rule 59 motion, they had to file an amended or modified notice of appeal. That's non-waivable. It's jurisdictional. I think it's undisputed that they did not file a modified notice of appeal or amended notice of appeal. That issue is gone, respectfully. So as we talked about, how could they have addressed their concern? They could have addressed their concern at the trial by requesting their jury instructions, specifically instructing the jury that those numbers had to be the same. They didn't do that. That issue has now been waived. Their other option, Your Honor, was, as Mr. Sena rightfully noted, after the verdict came in, the district court did call us to a sidebar while the jury was still present and said, is there an issue here? Is this inconsistent? At that time, as this Court ruled in the Duke case, Mr. Sena could have requested resubmission to the jury. He could have argued that, well, this is inconsistent. You should give this back to the jury and ask them to reconsider it. He did not do that. And that opportunity, obviously, once the jury is dismissed, is gone. And quite honestly, I think the district court even told Mr. Sena expressly at the sidebar, I don't want to hear complaining later if I release the jury now about this inconsistent verdict. Well, isn't there a difference between a special verdict, which they had special verdict forms, and a general verdict as to the obligation to do that before the jury is released? My understanding of the Zhang case from this Court talks about three basic types of verdicts. There's the general verdict. There's a special verdict with specific interrogatories. And then there's something that's kind of a mongrel of the two, in which the Court has said that they're not sure what to call it. This is either a general verdict because all it asks for is application of the law to the facts and damages, or it's possibly a mongrel practice because there's a request of whether or not it's willful or non-willful infringement. I would argue that that is still application of the law to the facts, but if that argument is made that it is this sort of mongrel practice, then you have to look at, in that situation, under the teachings of Zhang, we have to look to see whether or not on the face or legally these verdicts are inconsistent. And legally there's no reason that the trademark damages and the copyright damages have to be the same. Mr. Sena is arguing that under the facts, particularly to this case, they have to be. But there's no legal reason they have to be the same. Therefore, under Zhang, the Court couldn't set aside the verdicts as being supposedly inconsistent. Okay. Unless the Court has further questions, I would submit. Thank you, counsel. We'll give you two minutes. Thank you, Your Honor. I only just want to raise one issue on this waiver issue. I think we all have kind of summed it down, that this does become an issue of whether the damages were supported by the evidence or not. And there was a brief that I filed after trial for it's in the record at 144 to 155, and the Court's ruling on it is at 192 of the excerpts of the records. And that brief addressed the issue. Was the verdict inconsistent? Was the verdict supported by the damages? In that brief, I put the same evidence that I put in my brief to this Court about Mr. Kinrich's testimony of a one number being thrown out, $1.6 million. How the jury came up with $1.3 million was never, it's something that wasn't addressed and was addressed by me, saying that there's no way they could have arrived at that number. They heard a verdict, a number of $1.6 million in damages. They arrived at $1.3 million. There is no evidence to support that number. The copyright verdict should be set aside, or the trademark verdict should be set aside, or a new trial on damages should be issued. Is your position a jury cannot find a lower damage amount than the evidence comes in on the one witness who testifies concerning damages, that they have no basis to do that? They have a basis to do that if there's evidence to support it. But over here, there was only one number thrown out. There wasn't a calculation, unlike Mr. Wisniewski suggests, of how you arrive at $1.6 million. He said, well, I believe that there was infringement here. He never talked about trademark infringement or copyright infringement. And the infringement is $1.6 million in disgorgement. That was it. Where he did break down DVD and Internet, and the DVD or the Internet damages he calculated at $1.3 million. It was roughly at that number, which is actually interesting, because if you were to hit on trademark in this case, if we were to try to even separate the act, the act of the DVD sales would amount to more of a trademark infringement because the DVD is the actual physical product that now you're selling with the little logo on it that people could look at in the store and buy. As opposed to the online programming, it's just the TV comes on with the little label here. So if you were to do that, then the jury got it completely wrong by not awarding for DVD sales, when the DVD is really what showed off the trademark even more. Thank you, Your Honor. Thank you, counsel. Case that's started will be submitted.
judges: Settle, Reinhardt, Christen